**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| TRACI SMALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:23-CV-3629-MAB |
| ) | |
| TOUCHETTE REGIONAL HOSPITAL, ) | |
| INC., CARLA JORDAN, and ) | |
| KELLY GREEN SMITH, ) | |
| ) | |
| Defendants. ) | |

## <u>MEMORANDUM AND ORDER</u>

**BEATTY, Magistrate Judge:**

Plaintiff Traci Small filed this lawsuit against Touchette Regional Hospital ("TRH"), and two of TRH's employees, Carla Jordan and Kelly Green Smith, alleging interference and retaliation under the Family and Medical Leave Act (FMLA) after she was terminated from her job as a nurse at TRH. Defendants filed a motion for summary judgment as to both Plaintiff's interference and retaliation claims; that motion is now before the Court. Also before the Court are both Plaintiff's and Defendants' requests to file certain exhibits to their summary judgment briefing under seal.

### <u>MOTIONS TO SEAL</u>

Both sides ask to file certain exhibits under seal (Docs. 50, 67). Their motions were provisionally granted pending closer review by the Court (Docs. 61, 68). Plaintiff then filed an additional motion asking that if her request to file her medical records under seal

was denied, she be given leave to redact the information that is not relevant to the parties' dispute (Doc. 73).

Defendants seek to keep their Exhibits E, K, U, W, and X under seal (Doc. 50).

- Exhibit E (Doc. 69) is Plaintiff's past FMLA requests.
- Exhibit K (Doc. 69-1) is an x-ray report from December 2021.
- Exhibit U (Doc. 69-2) is one page of medical records from November 21, 2022, showing a diagnosis of osteoarthritis of the knee and that Plaintiff asked her doctor to fill out a medical certification for FMLA leave.
- Exhibit W (Doc. 69-3) is one-page of notes from the medical records about phone calls regarding an x-ray of Plaintiff's knee and FMLA paperwork.
- Exhibit X (Doc. 69-4) is 156 pages of Plaintiff's medical records.

The Court finds that Exhibits E, K, U, and W contain information central to this lawsuit and therefore should be publicly available. However, additional redactions beyond Plaintiff's birth date may be appropriate, like her home address and telephone number and medical information unrelated to the instant case (*see* Doc. 69, pp. 22, 23; Doc. 69-2) (DEF001418, DEF001419, and SMALL 239)). The parties shall meet and confer to determine what, if any, additional redactions are appropriate. Defendants shall then file new, unsealed versions of these exhibits with the agreed-upon redactions. Doc. 69, Doc. 69-1, Doc. 69-2, and Doc. 69-3 shall remain under seal.

As for Exhibit X, the Court believes this exhibit must be handled differently. This exhibit is 156 pages of Plaintiff's medical records, only a fraction of which bears any information relevant to this lawsuit. Because the records contain a wealth of medical information that is not at issue in this case, the Court finds good cause to keep Exhibit X under seal. Good cause, however, "does not extend to those portions of the records so

relevant to [a party's argument or] claim that they have been cited or quoted by the parties in other documents." *Chapman v. Raemisch,* No. 05-C-1254, 2009 WL 425813 at *7 (E.D. Wisc. Feb. 20, 2009). Therefore, Defendants are directed to file a new, unsealed exhibit, visible to the public, containing only those pages of the medical record included in the sealed Exhibit X that are cited to or referenced in their summary judgment briefing, statements of fact, and responses to Plaintiff's statement of facts, as well as in the portion of this Order discussing the motion for summary judgment below. Prior to filing those pages, however, the parties shall meet and confer to determine what, if any, additional redactions beyond Plaintiff's birth date may be appropriate.

After Defendants file their unsealed, redacted exhibits, a note will be added to the docket at Docs. 49 and 69, indicating where unsealed versions of Exhibits E, K, U, W, and X can be found.

As for Plaintiff's exhibits, she seeks to keep her Exhibits 21–28 and 30 under seal (Doc. 37, 73).

Exhibits 21, 22, 23, 25, and 26 (Docs. 72-1, -2, -3, -5, and -6) are very brief and select portions of Plaintiff's medical records, which all pertain to issues in this case and therefore must be publicly available. However, some redactions are needed. At the very least, Plaintiff's birth date should be redacted. *See* FED. R. CIV. P. 5.2. The parties shall meet and confer as to whether any additional redactions beyond Plaintiff's birth date are appropriate (*e.g.,* Plaintiff's address and phone number, medical information unrelated to the instant case, etc.). Plaintiff shall then file new, unsealed versions of these exhibits with the agreed-upon redactions. Docs. 72-1, -2, -3, -5, and -6 will remain under seal.

Exhibit 24 (Doc. 72-4) is a letter from Plaintiff's physician. It is duplicative of Defendants' Exhibit BB (Doc. 49-24), but rather than cite to Defendants' exhibit, Plaintiff filed her own. The letter contains information central to this lawsuit and therefore must be publicly available, but it contains personal identifying information (*i.e.*, Plaintiff's birth date) that should be redacted. Accordingly. Plaintiff shall file a new, unsealed version of this exhibit with her birth date redacted. Doc. 72-4 will remain sealed.

Plaintiff's Exhibits 27 and 30 (Docs. 72-7, 72-9) are similar to Defendants Exhibit X, in that they are longer selections of Plaintiff's medical records (43 and 23 pages, respectively) that contain some information relevant to this lawsuit, but lots of other information wholly unrelated to the issues at hand. Plaintiff shall follow the same instructions given to Defendants regarding their Exhibit X. She shall file a new, unsealed exhibit, visible to the public, containing only those pages of the medical record included in the sealed Exhibits 27 and 30 that are cited to or referenced in her summary judgment response, statement of additional facts, and responses to Defendants' statement of facts, as well as in the portion of this Order discussing the motion for summary judgment below. Prior to filing those pages, however, the parties shall meet and confer to determine what, if any, additional redactions beyond Plaintiff's birth date may be appropriate.

Finally, Plaintiff's Exhibit 28 (Doc. 72-8) is 20 pages of medical records containing FMLA certifications related to her knee. These records concern the issue central to this lawsuit and therefore should be publicly available. However, some redactions are needed. At the very least, Plaintiff's birth date should be redacted. *See* FED. R. CIV. P. 5.2. The parties shall meet and confer as to whether any additional redactions beyond

Plaintiff's birth date are appropriate (*e.g.*, Plaintiff's address and phone number). Plaintiff shall then file a new, unsealed version of this exhibit with the agreed-upon redactions. Doc. 72-8 shall remain under seal.

After Plaintiff files her unsealed, redacted exhibits, a note will be added to the docket at Docs. 65 and 72, indicating where unsealed versions of Exhibits 21–28 and 30 can be found.

**MOTION FOR SUMMARY JUDGMENT**

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view all the evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in their favor. *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021); *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is warranted. *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014) (citation omitted). *See also Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) ("Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law.") (citation and internal quotation marks omitted).

In deciding a motion for summary judgment, the Court's function is *not* to determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The one and only task is to decide whether there is any material dispute of fact that requires a trial. *Id.*; *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). In doing so, the court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart,* 14 F.4th at 760. The court's assigned task is to construe the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ziccarelli v. Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022).

"Even if a judge might believe a moving party has more and/or better evidence in its favor, a motion for summary judgment does not authorize or invite the judge to weigh evidence and decide whose story is more credible or persuasive." *Id.* "[N]o matter how tempting it might be on summary judgment to be distracted by the sparkle of seemingly compelling facts," *Stewart,* 14 F.4th at 760, the court's assigned task is to construe the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ziccarelli,* 35 F.4th at 1083.[1]

<u>FACTS</u>

Plaintiff Traci Small was employed as a registered nurse ("RN") at Defendant Touchette Regional Hospital, Inc., ("TRH") for approximately 15 years until her termination in May 2022 (Doc. 49-1, p. 20 (Pl. depo)). TRH maintained a written

---

[1]The Court feels compelled to emphasize these important principles about its role at the summary judgment stage in light of Defendants' summary judgment standard, which seems to imply that Defendants believe their ultimate victory "is foreordained." (Doc. 48, p. 10) (quoting *Mason v. Cont'l Illinois Nat. Bank*, 704 F.2d 361, 367 (7th Cir. 1983)). Moreover, the language quoted by Defendants from *Mason* does not come from the Seventh Circuit's summary judgment standard. Rather, it is a concluding line from the court's lengthy opinion affirming the district court's decision to grant summary judgment. *See Mason*, 704 F.2d at 367.

attendance policy that requires if an employee is going to be late or absent for their shift, the employee must notify their manager (or the manager's designee) "as soon as possible, preferably within two (2) hours of your regularly scheduled starting time . . . ." (Doc. 49-11, p. 2). The policy defines "excessive absenteeism" as three or more occurrences of calling in ill or absent in any six-month period (*Id.* at p. 2). However, absences for FMLA leave do not count as an occurrence (*Id.*; *see also id.* at p. 1). In 2021, TRH stopped managing FMLA requests in-house and outsourced them to a third-party administrator, FMLASource (Doc. 49-20, para. 7).

Records show that Plaintiff was seen at her primary care provider's office in late December 2021 for knee pain, which she said was so severe it was difficult to walk and she had to call off work (Pl.'s Exhibit 30 at MERCY 001289;[2] Doc. 49-24 (physician letter); *see also* Doc. 49-1, pp. 134–35 (Pl. depo)). A week later, x-rays were taken, which showed mild to moderate osteoarthritic changes in both knees (Doc. 49-10 (x-ray report)). According to Plaintiff, she continued having recurring episodes of severe knee pain and swelling thereafter (*see* Doc. 49-1, pp. 136–37 (Pl. depo); Doc. 65-9, para. 4–6 (Pl. declaration); *see also* Defs' Ex. X at MERCY 002224).

Plaintiff was scheduled to work the evening shift on Thursday, May 19, 2022, beginning at 6:30 p.m., followed by five days of vacation time (Doc. 49-1, pp. 99, 101 (Pl. depo); Doc. 1-1, para. 14)). Plaintiff stated that on May 19th, she was experiencing

---

[2] The Court cites to the name of Plaintiff's Exhibit and the Bates number because the only version of this Exhibit currently in the record is under seal (Doc. 72-9). Plaintiff will, however, be filing an unsealed and appropriately redacted version that will be available to the public.

swelling and incapacitating pain for the first time in over a month, but she knew she could not call in because she was on a final warning for absenteeism (Doc 49-1, pp. 99, 100 (Pl. depo); Doc. 65-9, para. 6 (Pl. declaration); *see also* Doc. 49-6 (progressive discipline form)). So Plaintiff called around 3:45 p.m. and asked house supervisor, Terri Lamar, if she could go "low census,"[3] which Lamar denied due to the volume of patients (Doc. 49-1, pp. 99, 100, 101 (Pl. depo); Doc. 49-8, pp. 24–25 (Lamar depo); Doc. 49-9, p. 3 (Lamar notes)). Plaintiff then asked if she could come in late for her shift, which Lamar also denied (Doc. 49-1, p. 102; Doc. 49-8, pp. 24–25, 26; Doc. 49-9).

Plaintiff called back approximately an hour later, at 4:40 pm, and told Lamar that she was going to "tak[e] off FMLA for her knee" (Doc. 49, para. 15; *see also* Doc. 49-1, pp. 101–04 (Pl. depo); Doc. 49-8, pp. 28–29, 40 (Lamar depo); Doc. 49-9 (Lamar notes)). It was discussed during the call that Plaintiff did not have an active FMLA case (Doc. 49-1, pp. 99, 103–04; Doc. 49-8, pp. 29, 31–32).[4] Lamar (incorrectly) told Plaintiff that she could not call in FMLA if she did not have an active FMLA case, and that she should contact Becky Burns in the benefits department about applying for FMLA leave (Doc. 49-9, p. 3 (Lamar notes); *see also* Doc. 49-8, pp. 33, 41 (Lamar depo)). Plaintiff disputes that Lamar told her either of those things, but she testified that she nevertheless knew that she did not need

---

[3] According to Defendants, low census is a status allowing staff to be sent home due to low patient volume (Doc. 48, pp. 5–6).

[4] Plaintiff testified that Lamar told her that she did not have an active case (Doc. 49-1, pp. 103–04). Lamar, however, testified that as house supervisor, she would not and did not know if Plaintiff had approved FMLA at the time she called in (Doc. 49-8, pp. 31–32). Lamar said that she asked Plaintiff if she had an active FMLA case and Plaintiff said no (*Id.* at pp. 29, 31, 32). Ultimately, this dispute as to how the information that Plaintiff had not yet been approved for FMLA leave came to light is immaterial.

to have pre-approved FMLA and she already knew who to contact (Doc. 49-1, pp. 99, 103–04, 105, 106, 107).

Plaintiff did not appear for her scheduled 6:30 pm shift on May 19, 2022. Lamar notified Plaintiff's leader, Amy Cooper, that Plaintiff had called off, and Cooper asked Lamar for a statement of the phone call (Doc. 49-8, pp. 33–34, 41–42; *see also* Doc. 49-9, p. 1).[5] Lamar sent notes to Cooper at 6:15 p.m. on May 19th (*see* Doc. 49-9, pp. 1, 3). That same night, Cooper escalated the situation to Kiyoko Guthrie and Kelly Green Smith (*see* Doc. 75, para. 17; *see also* Doc. 65-14, pp. 2–4 (email chain); Doc. 65-16, pp. 12–14 (email chain)),[6] and the following day, Cooper, Guthrie, and Green Smith decided to terminate Plaintiff's employment (Doc. 74, para. 18; *see also* Doc. 65-3, pp. 36, 40–42, 79–84, 89, 95, 104 (Cooper depo); Doc. 49-16, pp. 94, 97–98 (Green Smith depo)). According to Cooper, they believed Plaintiff's call-off was an unexcused absence because even though she "called in FMLA," she did not have "an active FMLA account" for an "approved qualifying reason" (Doc. 65-3, pp. 81–90 (Cooper depo)). In other words, "If you don't have active FMLA, you [can't] call off FMLA" (*Id.* at p. 88). They decided to terminate Plaintiff without any investigation into Plaintiff's eligibility for FMLA leave and without

---

[5] Amy Cooper is the Director of Medical-Surgical division and ICU (Doc. 49-8, p. 15 (Lamar depo)). She was Plaintiff's direct supervisor (*see* Doc. 49-1, p. 54 (Pl. depo).

[6] Kiyoko Guthrie is the Chief Nursing Officer, and is above Amy Cooper (Doc. 49-8, p. 12 (Lamar depo); Doc. 49-16, pp. 94–95 (Green Smith depo)). Defendant Kelly Green Smith was the Director of Human Resources at TRH (Doc. 49-16, pp. 13–14).

waiting to see if she opened an FMLA case or if she was approved for FMLA (*Id.* at pp. 89–90).

On Monday, May 23, 2022, Defendant Carla Jordan[7] and Amy Cooper began trying to contact Plaintiff to notify her that she was being terminated, but they were unable to reach her (Doc. 65-13, p. 16; *see also* (Doc. 49-16, pp. 100–01 (Green Smith depo)). That same day, Plaintiff was seen at her primary care provider's office on Monday, May 23, 2022, where she complained of right knee pain and stated she was having trouble sleeping and had to call into work the prior week due to the pain (Pl's Ex. 27 at MERCY001513). The PA diagnosed "chronic pain of right knee," advised her to use Voltaren gel, ordered new x-rays, and discussed physical therapy with her (*Id.* at MERCY001516, 001527). According to Plaintiff's physician, the PA wrote a note excusing her from work, which indicated that her symptoms started on May 19, 2022 (Doc. 49-24 (physician letter)).[8] Another x-ray was done in June 2022, which showed moderate arthritis with spurring and effusion (*Id.*).[9] Plaintiff's medical records reflect a diagnosis of osteoarthritis in her right knee as of November 2022 (*see, e.g.,* Defs' Ex. U at SMALL239).

---

[7] Defendant Carla Jordan is a Senior Human Resource Specialist at TRH (*see* Doc. 49-17, pp. 24-25). Kelly Green Smith was her supervisor (Doc. 49-17, p. 25).

[8] The Court was unable to locate a copy of the PA's note in the record.

[9] The Court was unable to locate an x-ray report from June 2022 in the record. Plaintiff cited to "Ex. 29 (DEF004-006)," (Doc. 65, para. 5), but that exhibit is the table of contents for the Touchette Employee Handbook and does not have anything to do with a June 2022 x-ray of Plaintiff's knee (*see* Doc. 65-21).

Carla Jordan unsuccessfully tried to call Plaintiff again on Tuesday, May 24, 2022 (Doc. 65-13, p. 16), but connected with her on Wednesday, May 25th, and told her that she was being terminated for "call offs" (Doc. 65-13, p. 16; Doc. 49-1, p. 108 (Pl. depo)). Plaintiff objected, stating that she had asked to use FMLA leave, and Jordan said she would look into things (Doc. 65-13, p. 16; Doc. 49-1, p. 108 (Pl. depo); Doc. 49-17, pp. 111–12 (Jordan depo)). Jordan then emailed Becky Burns, asking if Plaintiff "ha[d] an approved FMLA" or had "applied for FMLA" (Doc. 65-25, p. 3). Burns responded about an hour later, saying Plaintiff did not have an approved FMLA claim, but she had reached out to get the information to open a claim (*Id.*).

FMLASource incidentally emailed Burns later that day, stating that Plaintiff had contacted them to open an FMLA claim and asking Burns to verify the number of hours that Plaintiff had worked in the preceding twelve months (*e.g.*, Doc. 49-12, p. 11). Based on a report from TRH's payroll system, Burns reported to FMLASource that Plaintiff had only worked 682.8 hours in the previous year, which is not enough to qualify for FMLA leave (*Id.*; Doc. 65-24; Doc. 49-13, pp. 40–41, 67 (Burns depo)).[10] Burns also emailed Carla Jordan and told her that Plaintiff was not FMLA eligible because she did not work enough hours in the year preceding her request (Doc. 49-12, pp. 8). Unbeknownst to Burns, the report was not based on complete data of Plaintiff's hours worked (Doc. 49-12, p. 7; Doc. 49-13, pp. 41-43 (Burns depo)).

---

[10] FMLA leave is available only to "eligible employees," meaning an employee who has worked for the covered employer for at least 12 months and has accumulated at least 1,250 hours of service with that employer in the previous 12 months. 29 U.S.C. § 2611(2)(A).

The following day—May 26, 2022—sometime before 9:43 a.m., Carla Jordan called Plaintiff and told her that TRH was moving forward with her termination (Doc. 65-13, p. 16; *see also id.* at p. 1). Plaintiff was terminated, effective as of May 26, 2022 (Doc. 49-15 (term. paperwork); Doc. 65-13, p. 10 (term. letter to Pl.)). FMLASource sent a letter to Plaintiff the same day, informing her that her request for FMLA leave was denied because she was ineligible as she did not work enough hours (Doc. 49-18). The denial letter was also emailed to Becky Burns (Doc. 49-13, p. 68 (Burns depo); Doc. 65-24, p. 2), who then forwarded the denial to Amy Cooper and Carla Jordan, saying Plaintiff "had applied for FMLA but [was] ineligible due to number of hours worked" (Doc. 49-12, p. 6).

On June 2, 2022, Plaintiff called Becky Burns, disputing that she had only worked 682.8 hours (Doc. 49-1, p. 110 (Pl. depo); Doc. 49-16, p. 69 (Burns depo); Doc. 65-24, p.2 (timeline); Doc. 49-12, p. 7 (Burns email to Wojda)). Burns ran another report in the payroll system and discovered that Plaintiff was correct—she had actually worked over 1,600 hours and was eligible for FMLA leave (Doc. 49-1, pp. 110–11 (Pl. depo); Doc. 49-13, p. 69 (Burns depo); Doc. 65-24, p.2 (timeline); Doc. 49-12, p. 7 (emails). Burns told Plaintiff that she would notify FMLASource and HR at the hospital about the error, and she told Plaintiff to complete any FMLA paperwork that she received (Doc. 65-24; Doc. 49-12, p. 7; Doc. 49-1, p. 220 (Pl. depo)). According to Plaintiff, Burns also said that she would ask HR at the hospital to rescind the termination, and Burns also told her to call HR in a couple of days (Doc. 49-1, pp. 112, 131, 220).

Following this call, Burns sent out emails to Defendants Carla Jordan and Kelly Green Smith, and her own supervisor, Christine Wojda, informing them that she had

incorrectly reported Plaintiff's hours and Plaintiff had in fact worked enough to be eligible for FMLA leave (Doc. 49-12, pp. 7 (emails); Doc. 65-29, pp. 1–2 (more emails); Doc. 65-24, p. 2 (timeline). Burns voiced her concern that Plaintiff's termination may have been wrongful (Doc. 65-29, p. 1). Burns also notified FMLASource of the error and asked it to reopen Plaintiff's claim and forward Plaintiff appropriate paperwork to complete (Doc. 49-12, pp. 10–11).

According to Plaintiff, she called HR at the hospital a couple days after speaking to Burns, as Burns had instructed her to do (Doc. 49-1, pp. 112–13).[11] Plaintiff spoke to Kelly Green Smith and asked if her termination was going to be rescinded and if she was going to be allowed to submit her FMLA paperwork, and Green Smith said "no, she wasn't going to do either one" and the termination was going to stand (*Id.* at pp. 113, 131–32, 220–21). Green Smith denies ever saying this (Doc. 49-16, pp. 106–09 (Green Smith depo)).

A meeting was held at the TRH Board Room on June 3, 2022 to discuss Plaintiff's situation; present at the meeting were Defendant Carla Jordan, Defendant Kelly Green Smith, Amy Cooper, Christina Wojda, Becky Burns, and in-house counsel Pete Themas (Doc. 49-17, p. 118 (Jordan depo); Doc. 65-7, p. 148 (Green Smith depo); Doc. 65-3, pp. 118 (Cooper depo)). It was decided that Plaintiff would remain terminated but Plaintiff had the right to turn in her FMLA paperwork to be reviewed (Doc. 49-17, p. 120 (Jordan depo).

---

[11] Plaintiff testified that she thought the phone call with Green Smith was at the end of May, (Doc. 49-1, p. 113), but that cannot be true. Plaintiff is clear that she called Green Smith sometime *after* her conversation with Becky Burns, which the documents indicate happened on June 2, 2022.

FMLASource sent Plaintiff a letter dated June 5, 2026, indicating that her FMLA request for May 19th was "pending [a] decision" and instructing her to submit a completed Certification of Health Care Provider ("CHP") by June 21, 2022 (Doc. 49-12, p. 10 (email); Doc. 49-19 (letter)). After her termination, Plaintiff lost her medical benefits and insurance coverage, even though she needed to see a medical provider to obtain her certification (Doc. 48-1, pp. 66–67 (Wojda depo)). Plaintiff tried to contact the HR department at the hospital on June 7, 2022, but her call was not returned (Doc. 65-19). Plaintiff testified that aside from receiving the letter from FMLASource, nobody from TRH ever called her to explain the situation, and she was under the belief that she could no longer proceed with an FMLA leave request because her employment had been terminated, and Defendant Green Smith told her any certification she submitted would not be accepted (Doc. 49-1, pp. 131–33, 150, 169). Plaintiff did not submit a certification by the June 21st deadline nor request an extension of time. There is no evidence that FMLASource or anyone from TRH reached out to her to inquire about the status of the certification, even though TRH's standard procedure was to communicate with an employee whenever a certification was late and to give them an extension of time (Doc. 49-13, pp. 28–29 (Burns depo)).

## DISCUSSION

The Family and Medical Leave Act of 1993 (FMLA or Act) was enacted to allow employees to balance their work and family lives by taking reasonable unpaid leave for, among other things, a serious health condition that renders them unable to perform the functions of their job. 29 U.S.C. §§ 2601, 2612(a)(1)(D); *see also* 29 C.F.R. § 825.101. The

Page 14 of 34

FMLA authorizes eligible employees to take up to 12 weeks leave for continuous incapacity, or intermittent leave "when medically necessary" for chronic serious health conditions that cause episodic rather than continuous incapacity. *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836–37 (7th Cir. 2014) (citing *Stoops v. One Call Commc'ns, Inc.*, 141 F.3d 309, 312 (7th Cir. 1998)). *See also* 29 U.S.C. § 2612(a)(1)(D), (b)(1); 29 C.F.R. § 825.200(a), 825.202(b). "An eligible employee is entitled to restoration to the same or equivalent job and benefits when the leave ends, and to continuation of health insurance during leave." *Ziccarelli*, 35 F.4th at 1083–84 (citing 29 C.F.R. § 2614(a)(1) & (c)(1)).

To protect these rights, the FMLA makes it unlawful for an employer to interfere with an employee's exercise of, or attempt to exercise, FMLA rights or to retaliate against employees who exercise their FMLA rights. 29 U.S.C. § 2615(a)(1), (a)(2). The FMLA also grants employees a right of action to recover damages for violations of these provisions. *Id.* at § 2617(a)(2).

Here, Plaintiff claims both interference with her FMLA rights and retaliation for exercising her FMLA rights (Doc. 1). Defendants have moved for summary judgment on both claims (Doc. 47; *see also* Doc. 48). The Court will begin the discussion with Plaintiff's interference claim.

## A. FMLA Interference – Count 1

To succeed on an FMLA interference claim, the plaintiff must establish that: (1) they were eligible for FMLA protections; (2) their employer was covered by the FMLA; (3) they were entitled to take leave under the FMLA; (4) they provided sufficient notice of their intent to take leave; and (5) their employer denied or interfered with FMLA

benefits to which they were entitled. *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 365 (7th Cir. 2020) (citations omitted). An interference claim does not require an employee to prove discriminatory intent on the part of the employer; rather, such a claim "requires only proof that the employer denied the employee his or her entitlements under the Act." *Juday v. FCA US LLC*, 57 F.4th 591, 595 (7th Cir. 2023) (quoting *Scruggs v. Carrier Corp.*, 688 F.3d 821, 825 (7th Cir. 2012).

There is no dispute regarding the first two elements: Plaintiff was eligible for FMLA protection and TRH was subject to the FMLA (*see* Docs. 48, 67, 74). The dispute is over the third, fourth, and fifth elements. Specifically, Defendants argue Plaintiff was not entitled to FMLA leave as she did not have a serious health condition that made her unable to perform the functions of her job as a nurse at TRH (Doc. 48, pp. 10–15), and she failed to provide sufficient, timely notice of her intent to take FMLA leave (*Id.* at pp. 15–16). Defendants further argue that she never submitted a timely and sufficient medical certification of her need for leave, she sought FMLA leave for an improper purpose, and that TRH did not interfere with Plaintiff's FMLA rights (*Id.* at pp. 12–15, 16–17, 17–18). Plaintiff disputes all of Defendants' arguments (Doc. 67).

### 1.  Serious Health Condition

An employee is entitled to FMLA leave if she suffers from a "serious health condition" that renders her unable to perform the functions of her job. *Jones v. C & D Techs., Inc.*, 684 F.3d 673, 677 (7th Cir. 2012); 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves" either "inpatient care in a hospital" or "continuing treatment by a health

care provider." 29 U.S.C. § 2611(11); *accord Lutes*, 950 F.3d at 365. It is undisputed that Plaintiff's condition did not involve inpatient care (*see* Docs. 48, 67, 74), so her claim turns on her need for continuing treatment by a health care provider.

The regulations illustrate that a serious health condition involving continuing treatment by a health care provider can take various forms. *See* 29 C.F.R. § 825.115. Those relevant to Plaintiff's knee condition are (1) a period of incapacity of more than three consecutive calendar days combined with treatment by a health care provider and (2) any period of incapacity or treatment for such incapacity due to a chronic serious health condition. *Id.* at § 825.115(a), (c). Defendants argue that Plaintiff cannot satisfy the requirements of the former (*see* Doc. 48, pp. 10–11). Plaintiff contends that does not matter because she can satisfy the requirements of the latter (Doc. 67, pp. 4–8), which Defendants notably did not dispute (*see* Doc. 74).

A chronic condition is defined as one which (1) requires periodic visits at least twice a year for treatment by a health care provider, (2) continue over an extended period of time, and (3) may cause episodic rather than a continuing period of incapacity. 29 C.F.R. § 825.115(c). *See also* 29 C.F.R. § 113(b) (defining "incapacity" to mean "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom"); *Id.* at 825.113(c) ("The term treatment includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition."). The FMLA permits an employee with a chronic condition to take intermittent leave as needed for flare-ups, follow-up treatment, or symptoms, and the absences qualify for FMLA leave even if the employee

does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three days. *Id.* at § 825.115(f).

Viewing the evidence in a light most favorable to Plaintiff, a reasonable jury could conclude that her knee pain was a chronic serious health condition under the FMLA. That is, she received treatment for her knee pain at least twice within a one-year timeframe, in December 2021 and again in May 2022. Her knee pain continued over an extended period of time, from at least December 2021 to May 2022 and beyond. She experienced episodes of severe pain that left her unable to work her job at TRH because it was difficult for her to walk, but also to climb stairs, stand up from a sitting position, and sit down without support (Doc. 65-9, para. 5 (Pl. declaration)).

The Court further notes that the evidence Defendants cited to in their brief does not negate Plaintiff's evidence cited in the previous paragraph (*see* Doc. 48, pp. 11–12). Some of it has no bearing on whether Plaintiff meets the statutory definition of chronic serious health condition, such as the erroneous mention of rheumatoid arthritis in Plaintiff's medical records (*see* Doc. 48, p. 11; *see also* Doc. 72-2 (medical record indicating she "present[ed] in office . . . for follow-up on her RA")). The rest of Defendant's cited evidence—which includes a missed appointment, a six-month gap between appointments, a declination to follow up with a specialist, etc.—perhaps bears on the weight of Plaintiff's evidence regarding the severity of her pain and extent of her incapacity. But the Court cannot weigh evidence at summary judgment. That is the role for the jury; to consider Defendants' cited evidence, along with Plaintiff's corresponding

explanations, and decide for themselves if Plaintiff suffered from a chronic, serious health condition that entitled her to FMLA leave.

For these reasons, Defendants have failed to establish as a matter of law that Plaintiff did not have a serious health condition as defined by the FMLA, and this aspect of their motion for summary judgment is denied.

### 2. Sufficiency of Notice

The FMLA requires an employee to provide their employer with notice of their need for leave. 29 C.F.R. § 825.303. When the need for FMLA leave is not known in advance, like here, an employee must provide notice to the employer "as soon as practicable under the facts and circumstances of the particular case." *Id.* at § 825.303(a). In doing so, the employee "must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." *Id.* § 825.303(c).

As for the content of the notice, the regulations state that, "[a]n employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b). Case law has interpreted that to mean the employee must provide sufficiently clear information to "aler[t] the employer to the seriousness of the health condition" and to give the employer "probable cause . . . to believe that [the employee] is entitled to FMLA leave." *Stevenson v. Hyre Electric Co.*, 505 F.3d 720, 725, 726 (7th Cir. 2007) (quoting *Aubuchon v. Knauf Fiberglass*, 359 F.3d 950, 953 (7th Cir. 2004)); *see also Collins v. NTN–Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001) ("[E]mployers . . . are entitled to the sort of notice that will inform them . .

Page 19 of 34

. that the FMLA *may* apply.") (emphasis added). This is not an onerous requirement. *Burnett v. LFW Inc.*, 472 F.3d 471, 478 (7th Cir. 2006). The employee "doesn't have to write a brief demonstrating a legal entitlement," *Aubuchon*, 359 F.3d at 953, or even mention the FMLA in their leave request or otherwise invoke any of its provisions. *Burnett*, 472 F.3d at 478; 29 C.F.R. § 825.301(b). But they must do more than simply say they are "sick." *See Collins*, 272 F.3d at 1008 ("Sick" does not imply "a serious health condition."); 28 U.S.C. § 825.303(b) ("Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act.") The employee must also do more than simply request FMLA leave; "[h]e must give the employer reason to believe that he's entitled to it." *Aubuchon*, 359 F.3d at 952. *See also Lutes*, 950 F.3d at 366 ("[A]n employee must communicate the reason for seeking leave, and not merely request FMLA leave.").

Importantly, the Seventh Circuit has declined to craft "categorical rules" regarding what constitutes adequate notice. *Burnett v. LFW, Inc.*, 472 F.3d 471, 479 n.4 (7th Cir. 2006). "[A]dequacy of notice is a fact-rich question, [that] is perhaps best resolved by the trier of fact, particularly, where . . . the employer and employee dispute the quantity and nature of communications regarding the employee's illness." *Id.*; *accord Valdivia v. Twp. High Sch. Dist. 214*, 942 F.3d 395, 400 (7th Cir. 2019).

As previously mentioned, Defendants argue that Plaintiff failed to provide sufficient, timely notice of her intent to take FMLA leave (Doc. 48, p. 15). Specifically, Defendants take issue with the fact that while Plaintiff had been experiencing knee pain for months, she did not inform her supervisors or management until just before her shift

Page 20 of 34

on May 19, 2022 (*Id.* at pp. 15–16). Defendants also argue that Plaintiff's notice was not provided "as soon as practicable" because she did not mention her knee until the second phone call on May 19th, and because the second phone call violated TRH's attendance policy requiring notice at least two hours before the start of the employee's shift (*Id.* at p. 16). Finally, Defendants argue that Plaintiff's second call did not provide Touchette with enough information to establish probable cause that she was entitled to FMLA Leave (*Id.*).

Looking at the timing of Plaintiff's notice, Defendants have not established as a matter of law that Plaintiff's notice violated TRH's attendance policy. The policy states that if an employee is unable to come to work, they must notify their manager "as soon as possible, *preferably* within two (2) hours of [their] regularly scheduled starting time . . . ." (Doc. 49-11, p. 2) (emphasis added). The word "preferably" plainly indicates that TRH would like the employee to give them a two-hour heads-up, but it is not an absolute requirement. Furthermore, Plaintiff missed the preferred two-hour time frame by only ten minutes (*see* Doc. 49, para. 14 (Plaintiff called in at 4:40 p.m.); Doc. 48, p. 16 (Plaintiff's shift was scheduled to start at 6:30 p.m.)). On this evidence, a jury could find that Plaintiff complied with TRH's attendance policy in providing notice of her intent to take FMLA leave. However, a jury could also conclude that Plaintiff's notice was not "as soon as practicable" because she did not mention her knee or FMLA leave in her initial phone call at 3:45 p.m. Because the evidence supports conflicting inferences, there is a genuine issue of material fact, which can only be resolved by a jury.

Looking next at the content of Plaintiff's notice, viewing the record in the light most favorable to Plaintiff requires the Court to assume that Plaintiff told Terri Lamar on

May 19th that she was "'taking off FMLA' for her knee" (*see* Doc. 49, para. 15). This statement is undoubtably thin. It provides little to no information about the duration of the leave or the health condition justifying the leave. But it is indisputable that TRH was fully aware that Plaintiff wanted to use FMLA leave for a purported health issue. Terri Lamar documented it in her notes, which were forwarded to all of the individuals involved in Plaintiff's termination. Amy Cooper said as much at her deposition (*see* Doc. 65-3, pp. 41–42, 80–90). Carla Jordan documented that Plaintiff told her she had requested FMLA leave (Doc. 65-13, pp. 5, 16). That is enough to create a factual issue as to the sufficiency of Plaintiff's notice to TRH on May 19th. *See Davis v. Illinois Dep't of Hum. Servs.*, 137 F.4th 641, 650 (7th Cir. 2025) (holding testimony from plaintiff's supervisor that plaintiff said "she needed to leave early because she was feeling ill due to her pregnancy and that she wanted to use FMLA leave" was enough to create factual issue as to the sufficiency of plaintiff's notice); *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1000 (8th Cir. 2011) (holding employer had notice of employee's need for FMLA leave where employee and supervisor both asked HR about FMLA rights and employer sent her a letter summarizing FMLA rights and requesting that she fill out FMLA paperwork).

Accordingly, this aspect of Defendants' motion for summary judgment pertaining to the timing and sufficiency of Plaintiff's notice is denied.

### 3. Certification

Defendants' next argument—and the main contention that permeates their briefing—is that Plaintiff was not entitled to FMLA leave because she did not ever submit a complete and sufficient Certification of Health Care Provider ("CHP") (Doc. 48, pp. 12–

15; *see also* Doc. 47, 49, 74, 75). However, the Court is not persuaded that Defendants are entitled to summary judgment on this argument.

"When an employee initially requests FMLA leave, the employer may take the employee at his word and grant the request, or 'may request certification by the employee's healthcare provider'" that the employee in fact suffers from a serious health condition that renders them unable to work. *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 837 (7th Cir. 2014) (citation omitted). *See also* 29 U.S.C. § 2613(a). A request for certification should be made at the time the employee gives notice of need for FMLA leave or within five business days thereafter or, in the case of unforeseen leave, within five business days after the leave begins. 29 C.F.R. § 825.305(b). 29 C.F.R. §§ 825.305(b), (e), 825.308. The request for an initial certification must be in writing.[12]  And the employer is obligated to issue a written request for certification even if, like here, the employee handbook states that medical certification is required every time an employee requests FMLA leave. *See Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 426 (2d Cir. 2016); *Kempf v. Illinois Dep't of Hum. Servs.*, 618 F. Supp. 3d 804, 810 (C.D. Ill. 2022) (collecting cases).

If certification is requested, it is the employee's responsibility to provide a complete and sufficient certification "in a timely manner," and failure to do so may result

---

[12] *Kempf v. Illinois Dep't of Hum. Servs.*, 618 F. Supp. 3d 804, 809 (C.D. Ill. 2022); *see also* 29 C.F.R. § 825.305(a) ("[S]uch notice must be written notice whenever required by § 825.300(c)."); *Id.* at § 825.300(c)(1), (3) ("Employers shall provide written notice . . . to the employee," including any requirement for the employee to furnish certification of serious health condition, "each time the eligibility notice is provided pursuant to paragraph (b) of this section."); *Id.* at § 825.300(b) (requiring employers to provide an eligibility notice "at the commencement of the first instance of leave for each FMLA–qualifying reason in the applicable 12–month period").

in the denial of FMLA leave. 29 U.S.C. § 2613(a). The regulations specify that when leave is unforeseeable, like here, the employer must give the employee at least 15 calendar days to provide the requested certification, and more time "if it is not practicable under the circumstances" for the employee to submit the certification within 15 days "despite the employee's diligent, good faith efforts[.]". 29 C.F.R. § 825.305(b). If the employee fails to provide a timely and complete certification, or fails to provide any certification, the employer may deny the employee's FMLA leave request. 29 C.F.R. §§ 825.305(d); 825.313.

Defendants argue that Plaintiff's failure to provide a complete and sufficient CHP is fatal to her interference claim (as well as her retaliation claim), but the Court is unpersuaded by their argument. The law is clear: an *employee* has absolutely no obligation to produce a certification unless and until *her employer* requests one. *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 426 (2d Cir. 2016) ("Under the FMLA, *an employee* seeking leave need not submit a medical certification unless and until one is specifically requested by *her employer.*") (emphasis added) (citing 29 C.F.R. § 825.305(a)); *Branham v. Gannett Satellite Info. Network, Inc.*, 619 F.3d 563, 573 (6th Cir. 2010) (holding that employee's "additional duty" to provide certification is "triggered" only if the employer makes a "proper request" under the regulatory provisions.").

In *Pendarvis v. Xerox Corp.*, the court rejected the defendant's argument that it was entitled to summary judgment because the plaintiff had never produced a medical certification that she had a serious health condition or that she was unable to perform the functions of her job. 3 F. Supp. 2d 53, 55 (D.D.C. 1998). The court explained that, under the FMLA, an employer has the right to ask for a medical certification of plaintiff's

Page 24 of 34

condition before granting or denying her leave. *Id.* at 56 (citing 29 U.S.C. § 2613). Absent such a request, however, the employee is under no obligation to seek out medical treatment. *Id.* Because it was undisputed that the defendant never asked the plaintiff to provide medical certification prior to terminating her, the court held that plaintiff had no obligation to seek out a certification from her doctor, and therefore, the lack of certification could not support summary judgment for the defendant. *Id.* "Medical certification . . . is an 'option' for the employer, not a requirement . . . to maintaining an action." *Id.* (citations omitted).

Similarly, here, there is no evidence that TRH ever asked Plaintiff for a certification at the time of her absence and request for FMLA leave on May 19, 2022, or at any point prior to her termination. Rather, the evidence shows that TRH immediately opted to terminate Plaintiff following her May 19th absence. Following the reasoning of *Pendarvis,* because Defendants never asked Plaintiff for medical certification prior to terminating her, she had no obligation to provide one prior to filing suit, or at any point during the litigation. Plaintiff has other medical evidence (medical records and testimony from her medical providers) and her own lay testimony that can be used to establish she had a chronic serious medical condition that rendered her unable to work on the day in question. *Pendarvis,* 3 F.Supp.2d at 56 (medical certification not required to prove FMLA claim); *see also Hansen v. Fincantieri Marine Grp., LLC,* 763 F.3d 832 (7th Cir. 2014) (holding plaintiff was not required to present expert medical testimony to prove that his chronic serious health condition rendered him unable to work on days in question).

Furthermore, the Court does not believe that FMLASource's post-termination

request for certification from Plaintiff is of any consequence. The evidence demonstrates that Defendants' decision to terminate Plaintiff was based on the mistaken belief that she could not ask to take FMLA leave for her knee because she did not have prior approval to do so. That decision was later bolstered after-the-fact by a mistaken representation that Plaintiff had not worked the requisite amount of hours to be eligible for FMLA leave. However, after Becky Burns realized she was incorrect about Plaintiff's hours, she had FMLASource ask Plaintiff for a CHP. But at that point, Plaintiff was still terminated; she was no longer an employee at TRH and TRH was no longer her employer. TRH did not rescind her termination nor did it provisionally reinstate her employment. In fact, TRH made clear that they would only consider rescinding her termination if and when Plaintiff turned in a timely and complete certification (*see, e.g.*, Doc. 75, para. 39 (Defendants' statement that "Plaintiff never turned in a complete and accurate certification which would have allowed Green-Smith to revisit her termination")).

Crucially, Defendants did not cite to any legal authority explicitly stating, or even implicitly suggesting, that they had a right to ask Plaintiff for a certification—or to hold her to a 15-day deadline to submit it—*after she had already been terminated* (*see* Doc. 48, pp. 12–15; Doc. 74). Most of the case law Defendants cited to is readily distinguishable because in those cases, the employer asked the plaintiff for certification while they were still employed, and their failure to provide a timely and/or valid certification is what led to the denial of their FMLA request.[13] None of the cases involved a post-termination

---

[13] *See Smith v. Hope Sch.*, 560 F.3d 694, 697–98, 700–701 (7th Cir. 2009) (employee terminated after her request for FMLA leave was denied because she altered certification without her physician's knowledge or

request for certification in order to be reinstated to a job.

Absent an explanation, supported by legal authority, as to how and why their request for a CHP was proper under the regulatory provisions, Defendants have not established as a matter of law that Plaintiff's failure to provide a CHP entitles them to summary judgment. This aspect of their motion is therefore denied.

### 4. Improper Purpose

An employer may defeat an employee's FMLA interference claim by showing an "honest belief" that the employee used FMLA for an improper purpose. *See Juday v. FCA US LLC,* 57 F.4th 591, 595 (7th Cir. 2023); *Vail v. Raybestos Prods. Co.*, 533 F.3d 904, 909-10 (7th Cir. 2008).

---

consent); *Buckmaster v. Nat'l R.R. Passenger Corp.*, 2022 WL 1081947, at *1, 12 (D. Md. Apr. 11, 2022) (employee terminated after request for FMLA leave denied because he never submitted completed certification despite being given 58 days to do so); *Hobbs v. Sloan Valve Co.*, 2015 WL 4231743, at *2–3, 8-9 (N.D. Ill. July 10, 2015) (FMLA leave request denied because none of the five certifications submitted by plaintiff were fully complete and employer contacted doctor for clarification but doctor never responded); *Ryder v. Shell Oil Co.,* 131 F. Supp. 3d 635, 641 (S.D. Tex. 2015) (employee terminated after her request for FMLA leave was denied because her employer requested certification but she never provided it), aff'd, 652 Fed. Appx. 234 (5th Cir. 2016); *Kinchelow v. Robinson Prop. Group*, 1998 WL 180316, at *1, 2 (N.D. Miss. Mar. 27, 1998) (finding denial of FMLA leave after car accident was appropriate where plaintiff submitted an altered police report and medical evidence that did not amount to a "appropriate medical certification").

Defendants also cited to *Matthys v. Wabash Nat'l*, 799 F. Supp. 2d 891, 907 (N.D. Ind. 2011) (Doc. 48, p. 13 n.7), which is likewise distinguishable from the instant matter but for a different reason than the cases above. In *Matthys*, like here, the defendant terminated the plaintiff's employment without giving her fifteen days to provide an FMLA certification from her physician. The court nevertheless granted defendant's motion for summary judgment because plaintiff did not set forth evidence any evidence from which a jury could conclude she was medically unable to work due to her wrist injury or that she provided her employer with notice of her intent to take FMLA leave. *Id.* at 899–900, 905–06. Here, the Court has already determined that Plaintiff demonstrated an issue of fact that must be resolved by the jury as to whether she suffered from a serious health condition and provided the requisite notice to TRH of her intent to take FMLA leave.

Finally, Defendants cite to *Hansen v. Fincantieri Marine Group, LLC*, 763 F.3d 832, 837 (7th Cir. 2014) (Doc. 48, p. 13 n.7). Defendants did not explain, and the Court is unable to discern, how or why they think the cited portion of this opinion supports their argument. The page cited simply outlines the law regarding a certification request. *See Hansen*, 763 F.3d at 837. It does not, however, address the propriety of a post-termination request for certification. *See id.*

Page 27 of 34

Defendants argue that the timing and circumstances of Plaintiff's request for FMLA leave raise serious doubts about her intended purpose, and they point to: (1) the fact Plaintiff was already scheduled to be off work for five consecutive vacation days following the May 19, 2022, shift; (2) that Plaintiff only invoked the FMLA after her low census and late-arrival requests were denied; (3) that "it took Plaintiff almost an hour to come up with the excuse to call off 'due to FMLA'" after her low census and late-arrival requests were denied; and (4) that Plaintiff was still able to work full-time for another employer (Alton Mental Health Center) during the same time period. (Doc. 48, p. 17 and n.10). Defendants argue that the evidence shows that Plaintiff was seeking to avoid another unexcused absence as she was on her final warning for absenteeism, not to address a genuine medical need (*Id.*).

Defendants' argument is predicated on an interpretation of the facts that is most favorable to them, which, of course, is not what summary judgment requires. And Defendant's interpretation is certainly not the only conclusion a reasonable jury could reach. A reasonable jury could find, for example, that Defendants did not have an honest suspicion that Plaintiff was feigning her FMLA claim. After all, Defendants did not point to any testimony or documentation in the record that anyone at TRH harbored such a suspicion at the time Plaintiff requested FMLA leave in May 2022 or shortly thereafter (*see* Docs. 48, 49, 74, 75). There is also no testimony or documentation that fraudulent use of FMLA is the reason Plaintiff was terminated (*see* Docs. 48, 49, 74, 75).

The Court therefore can only conclude that Defendants' argument is an after-the-fact justification for Plaintiff's termination, which does not entitle them to summary

Page 28 of 34

judgment. *See, e.g., Vail v. Raybestos Prods. Co.*, 533 F.3d 904, 909–10 (7th Cir. 2008) (affirming summary judgment where employer terminated plaintiff based on honest suspicion she was misusing FMLA leave in order to work for her husband's lawn-mowing business after she took FMLA leave for two consecutive evening shifts due to alleged migraine but was surveilled mowing grass during the day between those shifts); *Crouch v. Whirlpool Corp.*, 447 F.3d 984, 985, 986, 988 (7th Cir. 2006) (affirming summary judgment where employer terminated plaintiff based on honest suspicion plaintiff was misusing FMLA leave for vacation rather than recovering from a knee injury after he was surveilled doing lawn work during the period of leave and also admitted going to Law Vegas during the period of leave); *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 680 (7th Cir. 1997) (affirming summary judgment where employer terminated plaintiff based on honest belief she was not using FMLA leave for its "intended purpose" of recovering from knee surgery after she was surveilled on multiple occasions walking, driving, sitting, bending, and shopping).

Accordingly, this aspect of Defendants' motion for summary judgment is denied.

### 5.  Interference

The FMLA broadly prohibits an employer's activity that restrains, limits, or discourages an employee's exercise or attempt to exercise FMLA rights. *Ziccarelli*, 35 F.4th at 1085–86 (7th Cir. 2022). *See Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860, 869 (6th Cir. 2023) ("chilling an employee's ability to exercise her statutory rights goes to the very heart of conduct that § 2615(a)(1) seeks to redress.").

Defendants' argument, essentially is that Plaintiff was given until June 21, 2022 to

submit her FMLA paperwork, but failed to do so (Doc. 48, p. 17-18). According to Defendants, Plaintiff's failure to do so is fatal to her claim. Again here, the Court is not persuaded by Defendants' argument. Defendants' argument conspicuously omits any mention of the fact that Plaintiff was terminated on May 20, 2022[14], or that her termination was based on an incorrect understanding of how the FMLA works. Quite simply, a reasonable jury could find that Defendants interfered with Plaintiff's attempt to exercise her FMLA rights for multiple reasons. For example, a reasonable jury could find Defendant failed to request medical certification when Plaintiff first gave notice of the need for FMLA leave or within five days. *See Schober v. SMC Pneumatics, Inc.*, No. IP99-1285-C-T/G, 2000 WL 1231557, at *9 (S.D. Ind. Aug. 21, 2000) ("Thus, a jury could reasonably find that [employer] interfered with the exercise of her rights by not requesting certification in a timely fashion."). As another example, a reasonable jury could find Defendant terminated Plaintiff before and without giving her at least 15 days to obtain a certification. *See Branham v. Gannett Satellite Info. Network, Inc.*, 619 F.3d 563, 572 (6th Cir. 2010) ("If, on the other hand, the employer terminates the employee before giving her the full fifteen-day period to provide a certification, the employer has violated the FMLA." (citing *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 555 (6th Cir. 2006)). Accordingly, this aspect of Defendants' motion for summary judgment is denied.

---

[14] Defendants' contention that Plaintiff was "allowed to miss her shift" on May 19, 2022 does not square with the record. In fact, the record suggests Plaintiff's superiors floated the idea of firing her that same evening and then ultimately terminated her the next day (*see* Doc. 65-14, pp. 2–4 (emails from Amy Cooper, Kiyoko Guthrie, and Kelly Green Smith; Doc. 75, para. 18; Doc. 65-3, pp. 36, 40–42, 79–84, 89, 95, 104 (Cooper depo); Doc. 49-16, pp. 94, 97–98 (Green Smith depo)).

## B.  RETALIATION – COUNT 2

To prevail on an FMLA retaliation claim, an employee must demonstrate that (1) she was engaged in a protected activity, (2) the employer took an adverse employment action against her, and (3) there was a connection between her protected activity and the adverse employment action. *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 363 (7th Cir. 2020). *See also Freelain v. Vill. of Oak Park,* 888 F.3d 895, 901 (7th Cir. 2018) (the employee must show the "protected activity caused the adverse action."). A retaliation claim, in contrast to an interference claim, "requires proof of discriminatory or retaliatory intent," meaning evidence that the employer "was acting under a prohibited animus." *Juday v. FCA US LLC*, 57 F.4th 591, 595, 596 (7th Cir. 2023) (citations omitted).

Here, the first two elements are not in dispute (*see* Doc. 48, pp. 18–19; Doc. 67, p. 13). Plaintiff undoubtedly engaged in protected activity by stating that she was taking FMLA leave on May 19, 2022. And TRH took an adverse employment action against her by terminating her. The issue is whether Plaintiff's request for FMLA leave caused her termination.

Defendants argue that Plaintiff cannot establish causation because there is no evidence of retaliatory animus (Doc. 48, p. 18). Rather, Plaintiff was terminated "for excessive absenteeism, under the (initially mistaken) belief that she was ineligible for FMLA leave" (Doc. 48, p. 18). Defendants also note that Plaintiff was approved for FMLA leave on three previous occasions, and she did not suffer from any negative ramifications following those leaves, as she admitted (Doc. 48, pp. 18–19; *see* Doc. 49-1, pp. 85–90 (Pl. depo)). Defendants contend it is non-sensical that they would take no issue with three

Page 31 of 34

prior FMLA leave requests but then suddenly reverse course with Plaintiff's fourth request and retaliate against her (Doc. 48, pp. 18–19.).

In responding, Plaintiff focuses on how certain aspects of Defendants' argument conflict with the evidence and how other aspects are illogical on their face (Doc. 67, pp. 13–16). But Plaintiff misses the forest for the trees. Her argument does nothing to address or negate Defendants' overall contention that she was terminated for excessive absenteeism following TRH's mistakes regarding the validity of her FMLA request and her eligibility for FMLA leave, but there was no retaliatory animus.

Notably, Plaintiff offers no evidence of retaliatory animus. She does not, for example, point to any ambiguous comments from which retaliatory intent could be inferred, or evidence of similar employees being treated differently. *See Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012); *see also Burnett v. LFW Inc.*, 472 F.3d 471, 481–82 (7th Cir. 2006) (proving retaliation under indirect method requires a plaintiff to show that she was treated differently than a similarly situated employee who did not take FMLA leave, despite a satisfactory job performance). All Plaintiff can point to is that she asked for FMLA leave and it was decided the next day to terminate her employment. But the Seventh Circuit has "repeatedly held that 'temporal proximity' or suspicious timing alone is rarely sufficient to overcome a motion for summary judgment," *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 221 (7th Cir. 2015) (citation omitted), particularly when "there are reasonable, non-suspicious explanations for the timing of [the] termination." *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 711 (7th Cir. 2017).

As Plaintiff repeatedly asserts, the evidence shows that she was terminated for

missing work on May 19, 2022, while on a final warning for excessive absenteeism and despite her request for FMLA because Defendants considered that request invalid since she did not have an active, approved FMLA request and because Defendants later came to believe she did not work enough hours to make her eligible for FMLA leave (*see, e.g.,* Doc. 65, pp. 4, 5). While Defendants may have been incorrect on both points, Plaintiff has not pointed to any evidence from which a reasonable jury could infer that those reasons were pretextual and that TRH was actually retaliating against her for exercising her FMLA leave rights. *See Paterakos v. City of Chicago,* 147 F.4th 787, 794 (7th Cir. 2025) (plaintiff's suspension was not retaliatory because supervisor honestly believed plaintiff was abusing her FMLA leave, even though supervisor's belief was based on mistaken assumptions that plaintiff's phone calls could not be related to caring for a family member). *Cf. Formella v. Brennan*, 817 F.3d 503, 513 (7th Cir. 2016) (even if a decision was "mistaken, ill considered or foolish, . . . so long as the employer honestly believes those reasons, pretext has not been shown" (internal quotation marks omitted)); *Culver v. Gorman & Co.,* 416 F.3d 540, 547 (7th Cir.2005) ("An employer's explanation can be 'foolish or trivial or even baseless' so long as it 'honestly believed' the proffered reasons for the adverse employment action." (citations omitted)).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

CONCLUSION

The parties' motions for leave to file under seal (Docs. 50, 67, 73) are **GRANTED in part and DENIED in part.** They shall file new, redacted and unsealed versions of their Exhibits, as instructed above, by April 7, 2026.

Defendants' motion for summary judgment (Doc. 47) is **GRANTED in part and DENIED in part.** It is denied as to Plaintiff's FMLA interference claim (Count 1) and granted as to Plaintiff's FMLA retaliation claim (Count 2).

This matter shall proceed to trial on Plaintiff's FMLA interference claim (Count 1). A status conference will be set by separate order to discuss trial scheduling and the utility of a settlement conference.

**IT IS SO ORDERED.**

**DATED: March 31, 2026**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**